## J. G. M. RAMSEY v. O. P. TEMPLE and M. L. PATTERSON.

1. CHANCERY PRACTICE AND PLEADING. *Exhibits.* The practice of making records in other cases exhibits to a bill will not be allowed. If the record of former cases contain any material fact it should be stated.

2. SAME. *Act of 1877, ch. 97, construed. Unliquidated damages.* If the act of 1877, ch. 97, extending the jurisdiction of the chancery court to all civil causes "except in injuries to persons, property or character," involving unliquidated damages, be constitutional, it must be strictly construed. It is, therefore, held that a bill in equity to recover damages of an attorney for ordering an execution held up whereby the amount of the judgment was lost, cannot be maintained upon demurrer that the remedy was at law.

**3. SAME.** *Same. Statute of limitation.* If such a bill could be maintained, the statute of limitation of six years would bar a recovery in this case.

FROM KNOX.

Appeal from the Chancery Court at Knoxville. A. CALDWELL, Sp. Ch.

CORNICK & CORNICK for complainant.

ANDREWS, HENDERSON & JOUROLMON and LOGAN & LUCKEY for defendants.

McFARLAND, J., delivered the opinion of the court.

The bill contains the following in substance, to-wit: That on the 4th of March, 1858, Brownlow and Ross filed their original bill in the chancery court at Knoxville in behalf of themselves and other creditors of the Bank of East Tennessee, to hold the complainants, Ramsey and Thos. C. Lyon, liable as trustees under an assignment by said bank and William M. Churchwell. That in the year 1858 the defendant, Temple, under an engagement previously made, became one of the counsel of Lyon and Ramsey, and acted as such, and that he has never, directly or impliedly, been discharged. In the year 1863 Samuel Bowman and Cynthia White each filed separate attachmemt bills in the same court against complainant Ramsey, and attached and sold his property, leaving a large surplus of funds after satisfying their demands. In the year 1864 the defendants, Temple and C. F. Trigg, filed their attachment bill against Ramsey to secure fees claimed by them for professional services

in the first named case, and in the course of the pro-
ceedings the court acquired jurisdiction over certain
money belonging to complainant Ramsey—it is to be
inferred (though not stated) the surplus arising under
the bills of Bowman and White. In the progress of
the first named case of Brownlow and Ross, but after
the attachment above mentioned, said Brownlow and
Ross filed an amended bill attaching a considerable
fund belonging to complainant Ramsey, and the same
being under the control of the court, it was loaned
out by order of the court, in the language of the
bill, "as funds on which Brownlow and Ross had ac-
quired a lien, not as funds on a part of which Tem-
ple and Trigg had acquired a prior lien by their at-
tachment." $1,219.48 of this money was, on the 11th
of August, 1866, loaned to J. A. Mabry, who gave
his note with G. W. Mabry as surety. Judgment
was rendered on this note for $1,572.2 in favor of
the defendant Patterson as clerk and master, on the
10th of June, 1871, and execution awarded but none
ever issued. That complainant is informed that in
July, 1871, the defendant, Patterson, as clerk and mas-
ter, prepared an execution on said judgment, and had
it ready to deliver to the sheriff, but defendant Temple
directed him not to hand it out, and none was issued.
That if an execution had been issued in the time pre-
scribed by law, the full amount of said judgment could
have been collected; that J. A. and G. W. Mabry have
been insolvent since the year 1872. That in the first
named case of Brownlow and Ross the Supreme Court
decided, at its fall term, 1877, that the monies above

Ramsey v. Temple.

mentioned as the individual funds of complainant Ramsey were not liable to the claim of Brownlow and Ross, or to counsel fees relative to said trusteeship, and dismissed the bill as to Brownlow and Ross, and remanded the cause to collect the fund for complainant Ramsey. Since that time complainant expressly charges the Mabrys have been wholly insolvent.

During the time from the levy of said attachment until the decision of the Supreme Court as above mentioned, complainant was allowed no control over the fund, and when he applied to borrow portions of it he was in one instance required to give a higher rate of interest than was required of others. Complainant was very old, and was ignorant of what had been done until the decree of the Supreme Court, and never assented for execution to be suspended. No part of said fund has ever been paid.

Complainant asks leave to refer to the records, decrees, orders and all papers on file, and to the execution docket of this court, so far as the same is pertinent in said four cases of Trigg and Temple, Samuel Bowman, Cynthia S. White, and Brownlow and Ross and to the Supreme Court decrees in said last named cause, as exhibits to this bill, and as parts hereof, but not to be copied. The prayer is for a decree against Temple and Patterson for the amount of the Mabry debt. Various causes of demurrer were assigned and overruled, and an appeal allowed to the defendants.

Under the last clause of the bill above referred to, attempting to make the records of four other causes

exhibits to the bill, we have been furnished with voluminous transcripts of said causes from the files of this court. This practice cannot be sanctioned. The pleadings should state the facts relied upon in a succinct and orderly manner, without unnecessary prolixity or detail, and if the records of former causes contained any material fact it should be so stated, but it cannot be allowed that in this mode voluminous records in other causes may be referred to as exhibits so as to give the complainants the benefit of having stated in his bill every fact appearing in these records. The power of the court to strike out or disregard such prolixity is ample. See sec. 4316 of the Code. It has not been shown that these records contain any thing very important to a hearing of this cause upon demurrer, but if it were we would not look to them. Several causes of demurrer have been assigned, but we will only notice such of them as may be necessary to a determination of the case. In the first place it would seem manifest that both defendants ought not to be held liable for the default. If Temple was authorized as solicitor to. control the issuance of the execution, then as the bill charges that he ordered the defendant, Patterson, not to issue it, the latter would be bound to obey the instructions, and would not be liable in any event, and the language of the bill already implies that Temple acted in giving this order as complainants solicitor. On the other hand, if he was not so acting or authorized to act as solicitor, then his orders was that of an unauthorized party, which no one would be bound to obey, and

consequently an act that could injure no one, and to which no liability would attach. In this view Patterson alone would be liable.

Passing this, however, we think there are two grounds upon which the demurrer should be sustained without reference to others. First, the jurisdiction of the court, and second, the statute of limitations. It will not be denied that, independent of the act of 1877, ch. 97, a demurrer to the jurisdiction in this case would have been fatal. That act extends the jurisdiction of the chancery court over all civil causes "except in injuries to persons, property or character, involving unliquidated damages." We are not to be understood as deciding the validity of this act in any respect, as serious objections have been made to it in view of the distinctive jurisdictions of our different courts, defined by the Constitution, but for the argument assuming it to be constitutional, we hold that it does not extend the jurisdiction of the chancery court to a case like this. In view of the long and well settled terms of distinction between causes properly recognizable in the two courts, and the practical inconvenience of vesting the chancery courts with jurisdiction over causes for the exercise of which it is not well adapted, we deem it proper to construe the above act strictly. The acts complained of are certainly in the nature of torts. An injury to "property" in its broadest sense would certainly include any tort injuring or destroying a chose in action, or rendering it valueless by defeating and obstructing the plaintiff in its collection.

17—VOL. 3.

From the very nature of the acts complained of, the damages are unliquidated, and not fixed by contract. They may be greater or less according as the extent of the injury may be shown by proof; and the character of the question is not changed by the allegation that the injury complained of has resulted in the loss of the entire debt; this allegation does not render the damages in their nature liquidated or certain. We admit that this act might be construed otherwise, but for the reason stated we deem a strict construction proper. For the same and perhaps stronger reasons we see no answer to the statute of limitations. The wrongs complained of occurred more than six years before the bill was filed, and this being the longest time, the action was barred, unless there be some ground of exception.

This is not a bill to hold the solicitor liable as trustee. He is charged with a tortuous act—no fraud or concealment is charged—and we see no sufficient answer to this defense. It is true that it appears that by reason of the attachments the complainant has lost the right to have the fund paid to him since the date of their levy, and therefore he could not sue directly for the money; but if this be any answer to the statute, it defeats the present case, as the attachment of Temple and Trigg is still pending so far as the allegations of the bill are concerned. But we are inclined to hold that although the fund was attached, and may in the end be decreed to others, still the complainant has all the time had such an interest as would enable him to sue for any tort by which

the fund was lost, not for the purpose of having it paid to him, for it is still his property, although it may in the end go to the payment of debts due from the others.    But this character of action he could as well have brought when the injury was committed as now, and having failed to do so for the full period of limitations, his action is barred.    His ignorance of the facts cannot excuse him, as the law charges him with a knowledge of every thing appearing in the record of his cause, and he had at all times the right to control the conduct of the cause as to himself, and to overrule the action of his solicitor, and therefore the allegation that he was not allowed to exercise any control over the conduct of the cause is immaterial, as he had at all times the right to discharge his counsel when dissatisfied with his conduct.

The decree will be reversed and the demurrer sustained and bill dismissed.